**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORTH JERSEY MEDIA GROUP, ET AL., <br><br> Movants, <br><br> v. <br><br> UNITED STATES OF AMERICA, ET AL., <br><br> Respondents. | Civil Action No: 16-267(SDW) <br><br> **AMENDED OPINION** <br><br><br> May 10, 2016 |

**WIGENTON**, District Judge.

Before this Court are 1) North Jersey Media Group, Inc., Bloomberg L.P., NBCUniversal Media, LLC, The New York Times Company, New Jersey Advanced Media, Dow Jones & Company, Inc., The Associated Press, Public Media NJ, Inc., New York Public Radio, American Broadcasting Companies, Inc., Philadelphia Media Network, PBC, and Politico's (collectively "Media") Motion to Intervene and For Access to Documents in the matter of *United States v. William E. Baroni, Jr. and Bridget Anne Kelly*, Criminal Action No. 15-193 ("Criminal Matter");[1]

---

[1] This motion was originally filed as part of the Criminal Matter docket, but was then moved to this separate civil docket ("Civil Matter"). For the purposes of this opinion, unless otherwise noted, all references to docket entries refer to the criminal docket.

1

and 2) The Port Authority of New York and New Jersey's ("Port Authority") Motion to Intervene to oppose the Media's Motion for Access to Documents.

For the reasons stated herein, the Motions to Intervene are GRANTED and the Media's Motion for Access to Documents is GRANTED in part and DENIED in part.

## I. BACKGROUND AND PROCEDURAL HISTORY

This Court assumes familiarity with the allegations and procedural history of this case and reviews only the facts relevant to the present motion. On April 23, 2015, Defendants William E. Baroni, former Deputy Executive Director of the Port Authority of New York and New Jersey and Bridget Anne Kelly, former Deputy Chief of Staff for Legislative and Intergovernmental Affairs for the Office of the Governor of New Jersey ("OGNJ") (collectively, "Defendants') were indicted by the United States Attorney's Office for the District of New Jersey ("USAO") on charges of conspiracy, fraud and civil rights violations for their alleged roles in causing lane closures on the George Washington Bridge in September 2013. (Dkt. No. 1, Indictment.) The Indictment also references unnamed and unindicted co-conspirators. (*Id.* at 5-7.)

Discovery in the Criminal Matter is subject to a Protective Order. (Dkt. No. 22.) The Protective Order applies to Confidential Discovery Materials produced by the Government and provides that if those materials are subsequently filed, they shall be filed "provisionally under seal." (*Id.* ¶ 4.) Confidential Discovery Materials are defined as: "(1) Information of a personal nature including family and financial matters; (2) HIPPA information; (3) Personal contact information; (4) Information about governmental and business matters not related to the Indictment; and (5) Search warrant applications and affidavits." (*Id.*) The Protective Order further provides that a party has ten days after such filing to make a formal motion to seal. (*Id.*) "If no motion to seal is filed, or such motion is denied, the materials shall be unsealed." (*Id.*)

In November, 2015, Defendants filed partially redacted motions seeking bills of particulars which requested, among other things, the names of any unindicted co-conspirators. (Dkt. Nos. 42 at 4-10, 43 at 50-60.) Defendants have not formally moved to seal those motions.[2] In response, the Government agreed to "identify any other individual about whom the Government has sufficient evidence to designate as having joined the conspiracy." (Dkt. No. 45 at 31.) On January 11, 2016, the Government submitted a letter with that information to this Court and Defendants ("Conspirator Letter"). The Conspirator Letter was not filed on the docket nor have its contents been made public. Although the Government requested that this Court maintain the letter under seal, it has not made a formal motion to do so.[3]

On January 13, 2016, the Media filed the instant motion, seeking an order permitting them to intervene in the Criminal Matter and granting them access to: 1) the Conspirator Letter; 2) all sealed or redacted materials for which a formal motion to seal has not been properly filed; and 3) any and all materials produced pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* materials"). (Media Mot. 1-2.) On February 16, 2016, the Government timely filed its opposition and the Port Authority moved to intervene in order to oppose the Media's motion. The Media filed its reply on February 26, 2016. As there is no opposition to either the Media or the Port Authority

---

[2] Although the parties have not filed formal motions to seal those redacted briefs and exhibits, the Port Authority has. Specifically, the Port Authority filed motions to seal 1) a memorandum by Gibson, Dunn & Crutcher LLP and its cover email attached to Defendant Baroni's moving papers, and 2) an email exchange between Port Authority executives regarding an unrelated civil matter attached to Defendant Kelly's reply brief. (Dkt. Nos. 47, 60, Port Authority Mot. at 2-3.) The Media "believe the documents in both Port Authority motions are not completely unrelated to the allegations in the Indictment" and have requested "an opportunity to be heard more fully if the Court decides to permit intervention." (Media Mot. at 6, n. 2.) However, this Court has since granted the Port Authority's motions. (Dkt. Nos. 78, 82.) The documents covered by those orders shall remain sealed and the Media's request to be heard is denied.

[3] Defendant Baroni objected to both the manner in which the Government submitted the Conspirator Letter and its request to seal its contents. (Dkt. Nos. 61, 68.)

intervening (Gov't. Opp. Br. 8, Media Reply at 1, n. 1, 3.), those motions shall be granted. The only issue before this Court, therefore, is the scope of the materials to which the Media shall have access.

## II.   DISCUSSION

In order to "promote[] important societal interests including confidence in the judicial system," *In re Newark Morning Ledger Co.*, 260 F.3d 217, 220 (3d Cir. 2001), both the First Amendment and the common law provide the public with a right of access to criminal judicial proceedings and records. *See Globe Newspaper Co. v. Superior Court of Norfolk Cty.*, 457 U.S. 596, 604 (1982) (noting that the "press and general public have a constitutional right of access to criminal trials") (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)); *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (stating that "[i]t is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records"); *United States v. Smith*, 776 F.2d 1104, 1107 (3d Cir. 1985) (stating that the "public's right of access to at least some judicial proceedings is now beyond peradventure"). That access is not absolute, however, and requires a balancing between the public's right of access and governmental interests. *See, e.g., United States v. Sealed Search Warrants*, Nos. 99-1096, 99-1097, 99-1098, 1999 WL 1455215, at *4 (D.N.J. Sept. 2, 1999). With that in mind, this Court turns to the Media's requests for access.

### A.   List of Unindicted Co-Conspirators

The First Amendment and the common law rights of access "extend to bills of particulars." *Smith*, 776 F.2d at 1111. Because the First Amendment is implicated, ensealment of a list of co-conspirators produced in response to a demand for a bill of particulars is only permissible if it "'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that

interest.'" *Id.* at 112 (quoting *Press Enterprise*, 464 U.S. 501, 540 (1984); *Globe Newspaper Co.*, 457 U.S. at 607)).

Here, the Government argues that "the privacy interests of uncharged third parties, who have no opportunity to vindicate themselves at trial" is such a compelling interest. (Gov't Opp. Br. at 8.) To do so, it relies on the Third Circuit's decision in *Smith*, which affirmed the district court's decision to deny a media motion to unseal a list of unindicted co-conspirators, finding that the privacy interests of those named outweighed the public's right to know their identities. *Smith*, 776 F.2d at 1114. That reliance is misplaced.

In finding a compelling privacy interest, the *Smith* court noted that the Government had a "broadly conceptualized list of unindicted co-conspirators," which included not only persons who the Government believed were unindicted co-conspirators, but also those who "*could conceivably be considered* as unindicted co-conspirators." (*Id.* at 1114, 1113 (emphasis in original).) Further, at the time the media sought to intervene, the Government had "not yet reached the point where [the U.S. Attorney] was willing to make a decision on whether to prosecute." *Id.* As Judge Mansmann emphasized in his concurrence, the privacy interests of the unnamed persons in *Smith* were uniquely compelling because the U.S. Attorney had produced "an overbroad bill of particulars" in order to give the government "great latitude in the description of the crime charged." *Id.* at 1116-17 (Mansmann, J., concurring).

The facts in the instant matter are different. The underlying events that gave rise to the Indictment have been extensively covered by the media, such that even persons tangentially involved have already been identified and exposed in the press. There is very little that is private about the lane closures or the lives of the people allegedly connected to them. Further, individuals thus far identified as being involved in the lane closings have been public employees and/or elected

and appointed officials, and anyone named in the Conspirator Letter is likely to have held a similar position.  As the *Smith* court noted, "the public has a substantial interest in the integrity or lack of integrity of those who serve them in public office."  *Id.* at 1114; *see also id.* at 1116 (Mansmann, J., concurring) (stating that public employees and elected officials "cannot claim a right of privacy with respect to the manner in which they perform their duties.  Where a criminal trial allegedly involves violations of the public trust by government officials, the public's need to monitor closely the judicial proceedings is perforce increased."); *United States v. Kushner*, 349 F. Supp. 2d 892, 906-07 (D.N.J. 2005) (noting that the "public has a strong interest in the use officials make of their positions of public trust").  In addition, the Government has limited the scope of the Conspirator Letter to those individuals for "whom the Government has sufficient evidence to designate as having joined the conspiracy." (Dkt. No. 45 at 31.)  Although privacy for third-parties is indeed important, this Court is satisfied that the privacy interests of uncharged third parties are insufficiently compelling to outweigh the public's right of access.  Disclosure is appropriate and the Media's motion for access to the list of unindicted co-conspirators is granted.

  B. <u>Sealed or Redacted Materials Not Sealed Pursuant to a Formal Motion to Seal</u>

The Media also seeks access to "the Sealed Documents filed in this proceeding pursuant to the Protective Order, which were provisionally sealed and for which no motion for permanent seal has been filed."  (Media Br. at 17.)  Under the Federal Rules of Criminal Procedure, courts may adopt protective orders for "good cause."  FED. R. CRIM. P. 16(d)(1) (recognizing a court's power to "deny, restrict, or defer discovery or inspection").  The Protective Order was entered after extensive negotiation between the parties and is narrowly drawn to protect the privacy of others, to prevent the exposure of governmental and business matters that are unrelated to the charges in the Indictment, and to maintain judicial fairness while avoiding unnecessary doubt under public

scrutiny. To achieve those goals, when Confidential Discovery Materials are filed, they are provisionally sealed. The Protective Order then requires a formal motion to seal to be filed within ten days, or the material is to be unsealed. As neither Defendants nor the Government have moved to seal their filings, the Media argues that those materials must be made available to the public under the order's plain terms.[4]

Before doing so, however, this Court will permit Defendants and the Government to each file a single motion out of time to seal any material previously submitted but not subject to a formal motion to seal.[5] This Court will then review and rule on those motions. If no such motion(s) are made, the currently redacted or provisionally sealed materials will be made public. Going forward, the parties must comply with the express terms of the Protective Order, or move to amend it. The Media's motion for access to sealed or redacted materials which have not been sealed pursuant to a formal motion to seal, therefore, is denied without prejudice.[6]

### III. CONCLUSION

---

[4] The Media requests, in the alternative, that this Court modify or lift the Protective Order. (Media Br. at 1, 20.) This Court is satisfied that the Protective Order is properly drawn and will not exercise its discretion to alter it or lift it at this time.

[5] This is required even if the parties agreed the documents should remain under seal. The Government's position that a formal motion to seal is not necessary where the parties consented to seal certain materials, (Gov't. Opp. at 17, 22), is unavailing. Such an agreement does not abrogate either side's obligation to follow the express terms of the Protective Order, nor does it grant them the authority to expand its reach.

[6] The alleged *Brady* material sought by the Media is contained in the redacted documents the Media seeks to have unsealed. (Media Br. at 19.) The Media argues that the Third Circuit's decision in *United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007) recognizes a global right of access to *Brady* materials and, consequently, for access to these documents in particular. This Court reserves any decision as to whether to unseal the materials in question until after such time as the Defendants and/or Government file, and this Court reviews, the formal motions to seal discussed above. Further, as there been no ruling on whether the documents at issue constitute *Brady* materials, this Court takes no position as to whether *Wecht* mandates access to them, except to note that the *Wecht* court explicitly limited its decision to the facts before it. *Id.* at 211.

For the reasons set forth above, the Media's Motion to Intervene is GRANTED and Motion for Access to Materials is GRANTED in part and DENIED in part. The Port Authority's Motion to Intervene is also GRANTED. An appropriate order follows.

/s/ Susan D. Wigenton

SUSAN D. WIGENTON, U.S.D.J


Orig:      Clerk
cc:        Parties